Roger H. Gray, M.D.
73 Lexington Street
Newton, MA 02466
(617) 965-2713

April 24, 2015

WORK PRODUCT - CONFIDENTIAL

Forensic Psychiatric Evaluation
Re: Zachary Zwerko
DOB: 04/08/82

I have been asked by Attorney Jeffrey Denner, who represents Mr. Zwerko, to perform a psychiatric evaluation of Mr. Zwerko in order to offer an aide in sentencing to the Court.

I have prepared this report after interviewing Mr. Zwerko for 3.5 hours on 2/14/15 and 3/27/15, reviewing police reports, and discussing my findings with Attorney Denner.

**Overview:**

Mr. Zwerko presents an intriguing psychological question with subsequent potential medical-legal consequences. He is a 33 year old man with no prior history of illegal behavior, antisocial behavior, mental illness, substance abuse, or employment problems. In that context, we must ask why he would engage in behavior which he acknowledges was wrong and for which he accepts responsibility. Understanding the sources of a problem does not imply excusing the behavior; however, it can lead to useful interventions and consequences.

This evaluation will highlight his psychological strengths and weaknesses. His strengths enabled Mr. Zwerko to overcome significant childhood difficulties to achieve academic and professional successes, but psychological weaknesses and vulnerabilities became the sources of the alleged offense conduct. Both strengths and weaknesses will be considered from the perspectives of his emotional foundations as well as problems which immediately preceded and precipitated the alleged offense conduct. If we can understand the intersection of Mr. Zwerko's established psychological structure and the specific stresses preceding the problem behavior, we will have a useful basis for understanding the risks of recidivism, the potential for rehabilitation and re-establishing himself as a healthy, law-abiding, contributing member of society, and interventions that will facilitate those goals.

**Brief History:**

Mr. Zwerko is a 33 year old currently unemployed business analyst. He grew up in New Jersey and has a sister ten years younger. He indicates that he was a hard-working and successful student who took great pride in his academic achievements. "I got straight A's." He denies problems with alcohol, drugs other than marijuana as detailed below, social relationships, school behavior, or mental health. When he was about one year old, he was diagnosed with adrenal neuroblastoma, a potentially lethal childhood cancer which required extensive surgery and on-going medical follow-up, including MRI examinations at least twice a year until he was about 10 years old. His illness created significant emotional and financial demands on his family. His father blamed him for the family's financial problems, "because I had cancer." Mr. Zwerko describes his mother as loving, supportive, but of limited intellectual capacity. He said, "She couldn't help me with 2nd grade homework." He describes his father as mean, harsh, lazy, abusive to his wife, alcoholic, and unwilling to provide emotional or financial help to his son. Mr. Zwerko said, "I knew that I was on my own by the time I was ten." He graduated high school and was accepted at Rutgers. He received no financial aide because his father refused to submit paperwork which could have substantiated the family's lack of resources and supported Mr. Zwerko's eligibility for financial aide. Determined to rise above his difficult circumstances and get a good education, he worked full time to pay his entire tuition and college expenses and lived with his parents. After receiving his Bachelor's degree in economics from Rutgers, he was accepted at the same institution for graduate work. As he was now emancipated and had proven his academic abilities and motivation, he got a scholarship and earned his MBA degree.

Mr. Zweko and his high school sweetheart, Melissa, were determined to escape their difficult family circumstances. When they were 22 years old, they left their families of origin and together purchased a home three weeks later. Although they were supportive of each other and loved one another, Melissa's emotional difficulties became a significant burden for him. They separated for one year, in 2006, but got back together as Melissa told him that she had changed. Mr. Zwerko said that he thought she had resolved her difficulties. They got engaged in 2008 and married in 2010. Their marriage began to deteriorate because Mr. Zwerko felt he could no longer provide the depth or type of emotional support she needed. They separated in January of 2012. Although they were unable to save their marriage, they negotiated an amicable separation based on their history of mutual respect and support; however, Mr. Zwerko describes his own mental state deteriorating as the marriage failed. "I was all alone...I missed her...I couldn't talk with anyone." He describes feeling depressed and hopeless. He considered suicide, began drinking excessively, using marijuana, and becoming increasingly isolated. He said he could not function at work. "I'd lie awake staring at the ceiling....my thoughts were racing...I drank alone-I'd never done that before." This decompensation became quite severe by January of 2012. Mr. Zwerko became more desperate about finances. Their separation resulted in his providing her directly with money, and he retained ownership of their condominium. He said, "I was left with $1,000 in the bank...I was afraid I couldn't pay the mortgage." "I thought I was back to where I started...with

2

nothing...no way to pay my car insurance or my mortgage...I thought 'After all my hard work, will I have to live with my parents again?'"

During this period of time, Mr. Zwerko was in contact with the co-defendant, David Post, whom he had met in graduate school. He admired this man who had a wife, children, houses in the Hamptons and Hoboken, and a history of substantial financial success. This individual invited Mr. Zwerko into his personal life, including dinners with the family.

**Mental Status Examination:**

Mr. Zwerko arrived on time, neatly attired, and with good hygiene. I began each interview by explaining that it was for forensic rather than treatment purposes, that information would be shared with Attorney Denner and most likely with the Court, that he could answer questions selectively if he wished, and that he could terminate the interview at any time. He reiterated this information in his own words, and in my clinical opinion, he understood these conditions. He was open, forthcoming, and he expressed relief that he could finally talk about his life and the alleged offense conduct.

He was oriented to time, person, place, and circumstance. His speech was of normal rate, pressure, prosody, and volume. His thinking was clear, linear, and logical. His major concerns focused on his shame, guilt, and remorse for his behavior and his wish to make restitution and rebuild his life. He acknowledged full responsibility for his behavior and blamed no one for his actions. Mr. Zwerko expanded on the topic of his responsibility, expressing his wish and need to understand his behavior. "It's so weired, I've never done anything like that in my life...I don't understand what I was thinking." He acknowledged having seriously considered suicide but denied current thoughts of suicide. He denied thoughts of harming others. He denied hallucinations of any type. There was no evidence of delusions, paranoia, or other thought distortions. He described his mood as anxious. His affect was mood congruent, appropriate to affect, and of reasonable range. His cognition was grossly intact in terms of immediate recall, recent and remote memory, concentration, abstraction, and fund of knowledge. His insight was good, and he demonstrated an eagerness to learn more about himself and understand why he behaved as he did. Judgment was good.

**Discussion:**

Mr. Zwerko

The alleged offenses took place during the time that Mr. Zwerko suffered with major depression. His marriage had failed. He and Melissa separated in January of 2012. He became severely depressed, abused alcohol and marijuana, and was unable to function at work. He describes many of the signs and symptoms of major depression including suicidality, hopelessness, helplessness, impaired sleep and appetite, loss of energy, difficulty with concentration, depressed mood and poor self-esteem. He was unable to ask for help from mental health professionals, family, friends, or colleagues. He

3

minimized the complex feelings which were the foundation for his desperation, isolation, and the alleged offense conduct. Prior to this conduct, there is no history antisocial behavior, alcohol or substance abuse, gambling, impulsivity, or illegal behavior. His depression was worsened by the use of alcohol and marijuana in a failed attempt to alleviate the depression. He had become hopeless and despondent, and these conditions contributed directly to his failure to appreciate the wrongfulness of his behavior. He believed that no one would be harmed Although he was aware that his behavior was "against the law," the combination of depression and unresolved frustration, anger, and resentment from his early life, substantially impaired his capacity to conform his behavior to the requisites of the law. It is significant that his behavior stopped after he left the involved company and established himself in a healthy adult relationship with Sandra Gutierrez and moved from New Jersey to Boston. It is significant that he revealed his history and problems to Ms. Gutierrez.

Mr. Zwerko accepts responsibility for his behavior. He does not blame the other involved party; however, in my clinical opinion, his unfortunate idealization of this man and vulnerability to the wish for a relationship with an older male contributed to impairing his judgment. He is ashamed and remorseful for his conduct.

It is useful to consider the alleged offense conduct in light of the emotional/psychological strengths and weaknesses that carried him to that turning point in his life, and now into his future.

## A. Developmental Issues

1. determination and self-reliance, perseverance and capacity to overcome obstacles
2. emotional isolation
3. denial of negative feelings such as fear and sadness
4. complex emotions regarding the failure of his parents to provide emotional, intellectual, social, and financial support.
5. vulnerability to depression (biological/familial/circumstantial)
6. inability to rely on others
7. belief that he bore full responsibility for problems, including his cancer and impact on family finances
8. unacknowledged and unresolved anger
9. self-esteem based on his desire to help others and his capacity for caring (even in the context of a difficult and ultimately failed marriage)
10. a strong sense of decency and fairness, as evidenced by his behavior with and towards Melissa

## B. Influences proximate and prior to the alleged offense conduct

1. loss of marriage -- sense of failure, feeling responsible for demise of marriage
2. loss of support
3. loss of financial stability
4. depression -- unable to function

4

5. subsequent polysubstance abuse
6. exacerbated depression
7. vulnerability to influence by envied elder
8. suspension of perspective – minimizing his actions – belief that no one was being harmed

## C. Influences and reactions subsequent to arrest

1. guilt, shame, remorse
2. acceptance of responsibility
3. desire to make restitution
4. healthy relationship with his fiancé, Sandra Gutierrez
5. capacity to be open with Sandra regarding the alleged offense conduct
6. resolution of depression and substance abuse
7. determination to learn about himself, understand why he made bad decisions, and never repeat
8. expressed determination to pursue psychotherapy
9. re-establishment of basic strengths and recognition of foundational vulnerabilities

## Conclusion:

In my opinion, to a reasonable degree of medical/psychiatric certainty, Mr. Zwerko's alleged offense conduct was anomalous behavior that was the direct result of a major depressive disorder with compounding substance abuse. These conditions have resolved, and the likelihood of recidivism is quite low. In my opinion, his psychiatric deterioration was the result of multiple early childhood issues combined and complicated by a failed marriage, the combination of which resulting in substantially diminished capacity to make appropriate decisions and leading directly to the alleged offense conduct. I believe that if these circumstances had not confronted and overwhelmed Mr. Zwerko, the alleged offense conduct would not have taken place. He accepts full responsibility and expresses appropriate shame, regret, and remorse. I see no benefit to incarcerating him. The goal of preventing repetition has been met. Retribution will serve no one, especially as he is determined to make restitution of the funds he received, actively wants psychiatric treatment, has the necessary support of his fiancé, and has native intelligence, determination, and strength of character. Incarceration has the strong likelihood of harming him while costing society the price of incarceration and greatly impairing the opportunities for rehabilitation. In my opinion, Mr. Zwerko has a very good prognosis to be a healthy, law-abiding, and constructive member of society if the appropriate interventions are integrated into the next phase of the legal process which could change his life for the better.

Respectfully submitted,


Roger H. Gray, M.D.